No. 20-12003

# In the United States Court of Appeals for the Eleventh Circuit

KELVIN LEON JONES, ET AL.,

*Plaintiffs–Appellees*,

v.

RON DESANTIS, ET AL.,

*Defendants–Appellants*.

## DEFENDANTS-APPELLANTS' PETITION FOR INITIAL HEARING EN BANC

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
NO. 4:19-CV-300-RH-MJ

CHARLES J. COOPER
PETER A. PATTERSON
STEVEN J. LINDSAY
SHELBY L. BAIRD
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
Telephone: (202) 220-9660
Fax: (202) 220-9601
ccooper@cooperkirk.com
ppatterson@cooperkirk.com
slindsay@cooperkirk.com
sbaird@cooperkirk.com

JOSEPH W. JACQUOT
NICHOLAS A. PRIMROSE
JOSHUA E. PRATT
EXECUTIVE OFFICE OF THE GOVERNOR
400 S. Monroe St., PL-5
Tallahassee, FL 32399
Telephone: (850) 717-9310
Fax: (850) 488-9810
joe.jacquot
@eog.myflorida.com
nicholas.primrose
@eog.myflorida.com
joshua.pratt
@eog.myflorida.com

BRADLEY R. MCVAY
ASHLEY E. DAVIS
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building, Suite 100
500 South Bronough Street
Tallahassee, FL 32399
Telephone: (850) 245-6536
Fax: (850) 245-6127
brad.mcvay
@dos.myflorida.com
ashley.davis
@dos.myflorida.com

*Counsel for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Defendants–Appellants certify that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1:

1. Abudu, Nancy G., *Attorney for Plaintiffs/Appellees*

2. Aden, Leah C., *Attorney for Plaintiffs/Appellees*

3. Adkins, Mary E., *Witness*

4. American Civil Liberties Union Foundation, *Attorneys for Plaintiffs/Appellees*

5. American Civil Liberties Union of Florida, *Attorneys for Plaintiffs/Appellees*

6. Antonacci, Peter, *Defendant*

7. Arrington, Mary Jane, *Witness*

8. Atkinson, Daryl V., *Attorney for Third Party*

9. Awan, Naila S., *Attorney for Third Party*

10. Bains, Chiraag, *Attorney for Third Party*

11. Baird, Shelby L., *Attorney for Defendant/Appellant*

12. Bakke, Douglas, *Witness*

13. Barber, Michael, *Witness*

14.    Barton, Kim A., *Defendant*

15.    Bennett, Michael, *Defendant/Witness*

16.    Bentley, Morgan, *Defendant*

17.    Bowie, Blair, *Attorney for Plaintiffs/Appellees*

18.    Brazil and Dunn, *Attorneys for Plaintiffs/Appellees*

19.    Brennan Center for Justice at NYU School of Law, *Attorneys for Plaintiffs/Appellees*

20.    Brown, S. Denay, *Attorney for Defendant*

21.    Brown, Toshia, *Witness*

22.    Bryant, Curtis, *Plaintiff/Appellee/Witness*

23.    Burch, Traci, *Witness*

24.    Campaign Legal Center, *Attorney for Plaintiffs/Appellees*

25.    Carpenter, Whitley, *Attorney for Third Party*

26.    Cooper & Kirk, PLLC, *Attorneys for Defendant/Appellant*

27.    Cooper, Charles J., *Attorney for Defendant/Appellant*

28.    Cowles, Bill, *Defendant*

29.    Cusick, John S., *Attorney for Plaintiffs/Appellees*

30.    Danahy, Molly E., *Attorney for Plaintiffs/Appellees*

31.    Danjuma, R. Orion, *Attorney for Plaintiffs/Appellees*

32.    Davis, Ashley E., *Attorney for Defendant/Appellant*

33.     Dēmos, *Attorneys for Third Party*

34.     DeSantis, Ron, *Defendant/Appellant*

35.     Diaz, Jonathan, *Attorney for Plaintiffs/Appellees*

36.     Donovan, Todd, *Witness*

37.     Dunn, Chad W., *Attorney for Plaintiffs/Appellees*

38.     Earley, Mark, *Defendant*

39.     Ebenstein, Julie E., *Attorney for Plaintiffs/Appellees*

40.     Ellison, Marsha, *Witness*

41.     Ernst, Colleen M., *Attorney for Defendant*

42.     Feizer, Craig Dennis, *Attorney for Defendant*

43.     Florida Justice Institute, Inc., *Attorneys for Third Party*

44.     Florida Rights Restoration Coalition, *Third Party-Amicus*

45.     Florida State Conference of the NAACP, *Plaintiff/Appellee*

46.     Forward Justice, *Attorneys for Third Party*

47.     Gaber, Mark P., *Attorney for Plaintiffs/Appellees*

48.     Geltzer, Joshua A., *Attorney for Amici Curiae*

49.     Giller, David, *Attorney for Plaintiffs/Appellees*

50.     Gordon-Marvin, Emerson, *Attorney for Third Party*

51.     Gruver, Jeff, *Plaintiff/Appellee*

52.     Hamilton, Jesse D., *Plaintiff/Appellee*

53.     Hanson, Corbin F., *Attorney for Defendant*

54.     Harrod, Rene D., *Attorney for Defendant*

55.     Haughwout, Carey, *Witness*

56.     Herron, Mark, *Attorney for Defendant*

57.     Hinkle, Robert L., *District Court Judge*

58.     Ho, Dale E., *Attorney for Plaintiffs/Appellees*

59.     Hogan, Mike, *Defendant*

60.     Holland & Knight, LLP, *Attorneys for Defendant*

61.     Holmes, Jennifer, *Attorney for Plaintiffs/Appellees*

62.     Ivey, Keith, *Plaintiff/Appellee*

63.     Jacquot, Joseph W., *Attorney for Defendant/Appellant*

64.     Jazil, Mohammad O., *Attorney for Defendant*

65.     Jones, Kelvin Leon, *Plaintiff/Appellee*

66.     Katzman, Adam, *Attorney for Defendant*

67.     Klitzberg, Nathaniel, *Attorney for Defendant*

68.     Kousser, J. Morgan, *Witness*

69.     Lang, Danielle, *Attorney for Plaintiffs/Appellees*

70.     Latimer, Craig, *Defendant*

71.     League of Women Voters of Florida, *Plaintiff/Appellee*

72.     Lee, Laurel M., *Defendant/Appellant*

73.    Leicht, Karen, *Plaintiff/Appellee*

74.    Lindsay, Steven J., *Attorney for Defendant/Appellant*

75.    Marconnet, Amber, *Witness*

76.    Marino, Anton, *Attorney for Plaintiffs/Appellees*

77.    Martinez, Carlos J., *Witness*

78.    Matthews, Maria, *Witness*

79.    McCord, Mary B., *Attorney for Amici Curiae*

80.    McCoy, Rosemary Osborne, *Plaintiff/Appellee/Witness*

81.    McVay, Bradley R., *Attorney for Defendant/Appellant*

82.    Meade, Desmond, *Witness*

83.    Mendez, Luis, *Plaintiff/Appellee*

84.    Meros, Jr., George M., *Attorney for Defendant*

85.    Meyers, Andrew J., *Attorney for Defendant*

86.    Midyette, Jimmy, *Attorney for Plaintiffs/Appellees*

87.    Miller, Jermaine, *Plaintiff/Appellee*

88.    Mitchell, Emory Marquis, *Plaintiff/Appellee*

89.    Morales-Doyle, Sean, *Attorney for Plaintiffs/Appellees*

90.    Moreland, Latoya, *Plaintiff/Appellee/Witness*

91.    NAACP Legal Defense and Educational Fund, *Attorneys for Plaintiffs/Appellees*

92.    Neily, Clark M. III, *Attorney for the Cato Institute (Amicus Curiae)*

93.    Nelson, Janai S., *Attorney for* Gruver *Plaintiffs/Appellees*

94.    Oats, Anthrone, *Witness*

95.    Orange County Branch of the NAACP, *Plaintiff/Appellee*

96.    Patterson, Peter A., *Attorney for Defendant/Appellant*

97.    Paul Weiss Rifkind Wharton & Garrison LLP, *Attorneys for Plaintiffs/Appellees*

98.    Pérez, Myrna, *Attorneys for Plaintiffs/Appellees*

99.    Perko, Gary V., *Attorney for Defendant*

100.   Phalen, Steven, *Plaintiff/Appellee*

101.   Pratt, Joshua E., *Attorney for Defendant/Appellant*

102.   Price, Tara R., *Attorney for Defendant*

103.   Primrose, Nicholas A., *Attorney for Defendant/Appellant*

104.   Raysor, Bonnie, *Plaintiff/Appellee*

105.   Reingold, Dylan T., *Plaintiff/Appellee*

106.   Riddle, Betty, *Plaintiff/Appellee*

107.   Rizer, Arthur L. III, *Attorney for the R Street Institute (Amicus Curiae)*

108.   Rosenthal, Oren, *Attorney for Defendant*

109.   Scoon, Cecile M., *Witness*

110.      Shannin, Nicholas, *Attorney for Defendant*

111.      Sherrill, Diane, *Plaintiff/Appellee*

112.      Short, Caren E., *Attorney for Plaintiffs/Appellees*

113.      Signoracci, Pietro, *Attorney for Plaintiffs/Appellees*

114.      Singleton, Sheila, *Plaintiff/Appellee/Witness*

115.      Smith, Daniel A., *Witness*

116.      Smith, Paul, *Attorney for Plaintiffs/Appellees*

117.      Southern Poverty Law Center, *Attorneys for Plaintiffs/Appellees*

118.      Spital, Samuel, *Attorney for* Gruver *Plaintiffs/Appellees*

119.      Stanley, Blake, *Witness*

120.      Steinberg, Michael A., *Attorney for Plaintiff/Appellee*

121.      Swain, Robert, *Attorney for Defendant*

122.      Swan, Leslie Rossway, *Defendant*

123.      Sweren-Becker, Eliza, *Attorney for Plaintiffs/Appellees*

124.      The Cato Institute, *Amicus Curiae*

125.      The R Street Institute, *Amicus Curiae*

126.      Tilley, Daniel, *Attorney for Plaintiffs/Appellees*

127.      Timmann, Carolyn, *Witness*

128.      Todd, Stephen M., *Attorney for Defendant*

129.      Topaz, Jonathan S., *Attorney for Plaintiffs/Appellees*

130.   Trevisani, Dante, *Attorney for Third Party*

131.   Turner, Ron, *Defendant*

132.   Tyson, Clifford, *Plaintiff/Appellee*

133.   Walker, Hannah L., *Witness*

134.   Wayne, Seth, *Attorney for Amici Curiae*

135.   Weiser, Wendy, *Attorney for Plaintiffs/Appellees*

136.   Weinstein, Amanda, *Witness*

137.   White, Christina, *Defendant*

138.   Wrench, Kristopher, *Plaintiff/Appellee*

139.   Wright, Raquel, *Plaintiff/Appellee*


No publicly traded company or corporation has an interest in the outcome of this case or appeal.


Dated: June 2, 2020                                  s/Charles J. Cooper
                                                     Charles J. Cooper
                                                     *Counsel for Defendants-*
                                                     *Appellants*

## RULE 35(b) AND 11TH CIR. RULE 35-5(c) STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that the district court decision below and the prior panel decision in *Jones v. Governor of Florida*, 950 F.3d 795 (11th Cir. 2020) (per curiam), are contrary to the following precedents of this circuit and that initial consideration by the full court is necessary to secure and maintain uniformity of the decisions in this court: *Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018); *Hand v. Scott*, 888 F.3d 1206 (11th Cir. 2018); *Shepherd v. Trevino*, 575 F.2d 1110 (5th Cir. 1978).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance: (1) whether a 2018 Florida constitutional amendment conditioning felon reenfranchisement on completion of all terms of sentence, including financial terms such as fines and restitution, violates the Equal Protection Clause, as applied to felons unable to pay; (2) whether Florida law conditioning felon reenfranchisement on payment of fees and court costs imposed as part of a criminal sentence is a "tax" prohibited by the Twenty-Fourth Amendment; and (3) whether the Due Process Clause requires the sweeping overhaul of Florida voter registration procedures ordered by the district court. These questions are of utmost importance to the State of Florida, and the district court's and prior panel's resolution of them conflicts with the authoritative

decisions of the United States Supreme Court and of other United States Courts of

Appeals that have addressed the issues.

s/ Charles J. Cooper
Charles J. Cooper
*Attorney of Record for Defendants-*
*Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .....................................................................iv

STATEMENT OF ISSUES ......................................................................1

INTRODUCTION ..................................................................................2

COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE ...................4

STATEMENT OF FACTS ...................................................................... 6

ARGUMENT AND AUTHORITIES.......................................................7

I.    En Banc Hearing Is Needed To Restore Circuit Precedent Requiring Purposeful Discrimination For Equal-Protection Claims...............................9

II.    En Banc Hearing Is Needed To Restore Circuit Precedent Requiring Application Of Rational-Basis Review To Felon Reenfranchisement..........10

III.    Amendment 4 And SB-7066 Do Not Violate The Fourteenth Amendment. ........................................................................14

IV.    Amendment 4 And SB-7066 Do Not Violate The Twenty-Fourth Amendment........................................................................16

CONCLUSION ...................................................................................17

# TABLE OF AUTHORITITES

**Case**                                                                **Page**

*Abbott v. Perez*, 138 S. Ct. 2305 (2018) ..............................................................3, 4

*Advisory Op. re: Implementation of Amendment 4*,
    288 So. 3d 1070 (Fla. 2020) ..................................................................7

*Armour v. City of Indianapolis*, 566 U.S. 673 (2012) ...........................................11

*Bearden v. Georgia*, 461 U.S. 660 (1983) .............................................................12

*Beller v. Middendorf*, 632 F.2d 788 (9th Cir. 1980)........................................14, 15

*Griffin v. Illinois*, 351 U.S. 12 (1956)............................................................12, 13

*Hand v. Scott*, 888 F.3d 1206 (11th Cir. 2018)................................................8, 9, 10

*Harvey v. Brewer*, 605 F.3d 1067 (9th Cir. 2010)........................2, 3, 8, 11, 12, 16

*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010)....................................3, 8, 11, 12

*Hinderlider v. La Plata River & Cherry Creek Ditch Co.*,
    304 U.S. 92 (1938)...................................................................................2

*Howard v. Gilmore*, 2000 WL 203984 (4th Cir. Feb. 23, 2000)........................3, 16

*Johnson v. Bredesen*, 624 F.3d 742 (6th Cir. 2010) .......................................3, 8, 16

*Jones v. Governor of Florida*,
    950 F.3d 795 (11th Cir. 2020) ........................... 2, 8, 10, 11, 12, 14, 15

*M.L.B. v. S.L.J.*, 519 U.S. 102 (1996)..............................................................10, 13

*Madison v. State*, 163 P.3d 757 (Wash. 2007)..........................................................8

*Mayer v. City of Chicago*, 404 U.S. 189 (1971) ....................................................13

*NFIB v. Sebelius*, 567 U.S. 519 (2012)....................................................................17

*Owens v. Barnes*, 711 F.2d 25 (3d Cir. 1983) .........................................3, 8, 11, 12

*Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979) .....................................9

*Richardson v. Ramirez*, 418 U.S. 24 (1974) ......................................................7, 11

*Roe v. Alabama,* 68 F.3d 404 (11th Cir. 1995)........................................................4

*Shepherd v. Trevino*, 575 F.2d 1110 (5th Cir. 1978).......................................3, 8, 11

*Tate v. Short*, 401 U.S. 395 (1971) ..................................................................12, 13

*Thompson v. Dewine*, — F.3d —, 2020 WL 2702483
    (6th Cir. May 26, 2020) ........................................................................14

*Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018) ..........................8, 9, 13

*Williams v. Illinois*, 399 U.S. 235 (1970) ...............................................................13

## Constitutions and Statutes

Fla. Const. art. VI, § 4 ...........................................................................................6

Fla. Const. art. XI, § 5(e) .......................................................................................6

Fla. Stat. § 98.0751 ............................................................................................6, 7

2019-162 Fla. Laws 1 .............................................................................................6

**STATEMENT OF ISSUES**

1.      Whether Florida law conditioning felon reenfranchisement on completion of all terms of sentence, including financial terms such as fines and restitution, violates the Equal Protection Clause, as applied to felons unable to pay.

2.      Whether Florida law conditioning felon reenfranchisement on payment of fees and court costs imposed as part of a criminal sentence is a "tax" prohibited by the Twenty-Fourth Amendment.

3.      Whether the Due Process Clause requires the overhaul of Florida voter registration procedures ordered by the district court.

**INTRODUCTION**

The United States is a "Union of sovereign States." *Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 104 (1938). The district court's injunction—relieving hundreds of thousands of felons of their obligation under the Florida Constitution to complete *all* terms of their criminal sentences, including financial terms, before regaining their eligibility to vote—has stripped Florida of a defining characteristic of its sovereignty: the power to determine, within the constraints of the Constitution, the composition of the State's electorate. The district court's purported basis for this startling holding—that the Constitution and precedent somehow require the State to reenfranchise felons who have not completed their criminal sentences—rests on error built upon error. It gets Supreme Court precedent wrong. It gets binding Circuit precedent wrong. And instead of remedying a constitutional violation, it creates one.

Worse still, a panel of this Court made some of the very same mistakes when one of the issues presented here—whether Florida's reenfranchisement scheme impermissibly discriminates based on wealth—was previously appealed in a preliminary-injunction posture. *See Jones v. Governor of Florida*, 950 F.3d 795 (11th Cir. 2020) (per curiam). The panel's decision to apply heightened scrutiny, for example, conflicts with binding circuit precedent and the precedent of every other circuit to address the issue. *See Harvey v. Brewer*, 605 F.3d 1067, 1079 (9th Cir.

2010) (O'Connor, J.); *Hayden v. Paterson*, 594 F.3d 150, 170 (2d Cir. 2010); *Owens v. Barnes*, 711 F.2d 25, 27 (3d Cir. 1983); *Shepherd v. Trevino*, 575 F.2d 1110, 1114–15 (5th Cir. 1978). And the panel's holding that conditioning felon reenfranchisement on the payment of financial terms of sentence likely violates the Fourteenth Amendment as applied to those unable to pay directly conflicts with the Sixth Circuit's contrary conclusion. *See Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).

The district court, after a full trial on the merits, reaffirmed its prior wealth-discrimination holding and went two steps further: First, it struck down as a tax prohibited by the Twenty-Fourth Amendment the portion of the State's reenfranchisement scheme requiring the payment of court fees and costs imposed as part of a felon's sentence. In doing so, the district court departed from consistent authority rejecting felons' Twenty-Fourth Amendment claims. *See Bredesen*, 624 F.3d at 751; *Harvey*, 605 F.3d at 1080; *Howard v. Gilmore*, 2000 WL 203984, at *2 (4th Cir. Feb. 23, 2000). Second, it sought to effectuate its erroneous constitutional holdings by rewriting the Division of Elections' advisory opinion process, going so far as to prescribe a form to be used and establish deadlines. One would be hard-pressed to find a greater intrusion on State sovereignty. Lacking any warrant in the Constitution, the district court's injunction preventing the "State from

conducting [its] elections pursuant to a statute enacted by the Legislature . . .

seriously and irreparably harm[s it]." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018).

The issues presented in this appeal are critically important and time sensitive. With a primary election less than three months away, and a presidential election only three months after that, the need for a prompt and decisive ruling by this Court is clear and urgent. If elections are held with the district court's injunction in place and that injunction is later vacated because it erroneously reenfranchised hundreds of thousands of ineligible voters, the integrity of those elections will have been corrupted and their results possibly opened to challenge. And because a panel of this Court will not be free to correct the erroneous preliminary opinion in *Jones* by applying the correct Fourteenth Amendment standards to this appeal, *see Roe v. Alabama,* 68 F.3d 404, 408 (11th Cir. 1995), initial en banc review is the State's best, and perhaps its only, option for securing timely relief. This Court should grant the petition and conclusively dispose of this action before the upcoming 2020 elections.

## COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

Plaintiffs brought this suit against Governor Ron DeSantis and Secretary of State Laurel M. Lee ("Appellants") on behalf of a class of felons with unpaid fines, restitution, and/or fees imposed as part of their criminal sentences and a subclass of felons unable to pay such financial terms. They alleged that a 2018 Florida

constitutional amendment reenfranchising felons but conditioning reenfranchisement on the fulfillment of "all terms" of a criminal sentence, including financial terms, violates the federal Constitution.

On October 18, 2019, the district court held that Plaintiffs were likely to succeed on their equal-protection claim because the requirement that felons complete the financial terms of their sentences, as applied to those who are unable to pay, discriminates on the basis of wealth, and it preliminarily enjoined Appellant Lee from preventing Plaintiffs from registering to vote or voting. *See* Order Den. Mot. To Dismiss or Abstain & Granting a Prelim. Inj. at 53–55, Doc. 207 (Oct. 18, 2019) (Exhibit A). On February 19, 2020, a panel of this Court affirmed and remanded the case for trial.

After certifying a class of nearly a million felons and a subclass of hundreds of thousands of felons, *see* Op. on the Merits at 1, Doc. 420 (May 24, 2020) (Exhibit B); Order on Certifying a Class & Subclass at 8–9, Doc. 321 (Apr. 7, 2020) (Exhibit C), and conducting a trial on the merits, on May 24, 2020, the district court held the State's reenfranchisement scheme unconstitutional insofar as it (1) restricts felons from voting who are otherwise eligible but "genuinely unable to pay the required amount" of the financial obligations of their sentences; (2) requires felons to pay "amounts that are unknown and cannot be determined with diligence"; and (3) requires felons "to pay fees and costs as a condition of voting," *see* Ex. B at 118,

(May 24, 2020); *see also* Judgment, Doc. 421 (May 26, 2020) (Exhibit D). The district court also replaced the reenfranchisement scheme set out in Florida law with an elaborate set of new procedures requiring the Division of Elections to issue advisory opinions to requesting felons detailing the precise amount outstanding on the felon's sentence and providing a factual basis for finding that the felon is able to pay. Ex. B at 119–20.[1]

On May 29, 2020, Appellants moved the district court to stay its judgment pending appellate review. That motion is pending.

## STATEMENT OF FACTS

In November 2018, the People of Florida adopted Amendment 4, which amended the Florida Constitution to restore voting eligibility for any felon not convicted of murder or a felony sexual offense "upon completion of all terms of sentence." FLA. CONST. art. VI, § 4. The Amendment passed with 64.55% of the vote—narrowly exceeding the 60% threshold required to amend the State Constitution. *See* FLA. CONST. art. XI, § 5(e).

The State Legislature then enacted, and Governor DeSantis approved, Senate Bill 7066 ("SB-7066"). *See* 2019-162 Fla. Laws 1. SB-7066 provides that "completion of all terms of sentence" in Amendment 4 means "any portion of a

---

[1] Appellants reserve the right to challenge the district court's additional holding that Florida's registration form violates the National Voter Registration Act.

sentence that is contained in the four corners of the sentencing document, including, but not limited to" "[f]ull payment of restitution ordered to a victim by the court as a part of the sentence" and "[f]ull payment of fines or fees ordered by the court as a part of the sentence or that are ordered by the court as a condition of any form of supervision, including, but not limited to, probation, community control, or parole." *Id.* at 28 (codified at FLA. STAT. § 98.0751(2)(a)5.a–b).

SB-7066 also provides that the financial obligations above "are considered completed" one of three ways: (1) "[a]ctual payment of the obligation in full"; (2) "the termination by the court of any financial obligation [e.g., restitution] to a payee," upon the payee's approval; or (3) completion of community service hours "if the court . . . converts the financial obligation to community service." *Id.* at 29 (codified at FLA. STAT. § 98.0751(2)(a)5.e.(I)–(III)).

On January 16, 2020, the Florida Supreme Court confirmed that "all terms of sentence" in Amendment 4 "refers to obligations and includes 'all'—not some— [financial terms of sentence] imposed in conjunction with an adjudication of guilt," including fines, restitution, fees, and costs. *Advisory Op. re: Implementation of Amendment 4*, 288 So. 3d 1070, 1081 (Fla. 2020).

## ARGUMENT AND AUTHORITIES

States have constitutional authority to disenfranchise felons permanently. *See Richardson v. Ramirez*, 418 U.S. 24 (1974). Before this case, every relevant circuit

court decision accordingly held that equal-protection challenges to state laws governing felon disenfranchisement and reenfranchisement are subject to rational-basis review, absent any suspect classification. *See Harvey*, 605 F.3d at 1079; *Hayden*, 594 F.3d at 170; *Owens*, 711 F.2d at 27; *Shepherd*, 575 F.2d at 1114–15. By applying heightened scrutiny, the *Jones* panel and the district court rejected this unanimous consensus. Moreover, *Jones* admitted that its decision conflicted on the precise issue here with the Sixth Circuit and the Washington Supreme Court. *See Jones*, 950 F.3d at 808–09; *Bredesen*, 624 F.3d at 746; *Madison v. State*, 163 P.3d 757 (Wash. 2007) (en banc).

The *Jones* panel and the district court also contravened the binding precedent of this Circuit in three ways. First, in *Hand v. Scott*, 888 F.3d 1206 (11th Cir. 2018), this Court held that "a reenfranchisement scheme could violate equal protection" only "if it had *both* the purpose and effect of invidious discrimination." *Id.* at 1207. Yet *Jones* expressly declined to require a showing of purposeful discrimination. *See* 950 F.3d at 828. Second, *Shepherd*, binding in this Circuit, held that "selective . . . reenfranchisement of convicted felons . . . must bear a rational relationship to the achieving of a legitimate state interest." 575 F.2d at 1114–15. Yet the *Jones* panel rejected rational-basis review in favor of heightened scrutiny. *See* 950 F.3d at 823–24. Finally, in *Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018), this Court refused to extend the Supreme Court's narrow exceptions to rational-basis review

for wealth-discrimination claims beyond their established limits. *Id.* at 1264. Yet the panel did just that.

En banc hearing is necessary to restore these precedents to their proper place in this Court's *corpus juris*, correct the manifestly erroneous legal conclusions in *Jones* and the decision below, and preserve the decision of the People of Florida to insist that a full measure of justice—as determined by the sentencing judge and jury—be served by all felons before restoring their rights to vote. The en banc Court should likewise reverse the district court's erroneous Twenty-Fourth Amendment ruling and definitively hold that Florida's felon reenfranchisement scheme does not violate the federal Constitution.

## I. En Banc Hearing Is Needed To Restore Circuit Precedent Requiring Purposeful Discrimination For Equal-Protection Claims.

An equal-protection plaintiff must show that the government "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (quotation omitted). This Court has confirmed that this principle applies with full force in the felon-reenfranchisement context, holding that "a reenfranchisement scheme could violate equal protection" only "if it had *both* the purpose and effect of invidious discrimination." *Hand*, 888 F.3d at 1207.

*Jones*, meanwhile, held that Plaintiffs were not required to show purposeful discrimination. 950 F.3d at 828. Its reasons for doing so are wrong. First, *Jones* claimed that the purposeful-discrimination requirement does not apply because this case, unlike *Hand*, is not "a race discrimination case." *Id*. But the purposeful-discrimination requirement is a general principle of equal-protection law, as shown by *Feeney*, a sex-discrimination case. *See* 442 U.S. at 279–80.

Second, *Jones* claimed that in *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996), the Supreme Court held that the purposeful-discrimination requirement "is not applicable in wealth discrimination cases." 950 F.3d at 828. But *M.L.B.* merely declined to overrule a narrow line of cases striking down laws conditioning an indigent's access to certain judicial proceedings on payment of a fee. *See* 519 U.S. at 127. This case, however, does not concern access to judicial proceedings, and is therefore outside the *M.L.B.* exception.

There is no plausible basis for jettisoning the purposeful-discrimination element of Fourteenth Amendment claims here. Reversal of *Jones*'s contrary holding is necessary to restore the uniformity and coherence of this Circuit's precedent.

## II.   En Banc Hearing Is Needed To Restore Circuit Precedent Requiring Application Of Rational-Basis Review To Felon Reenfranchisement.

In *Richardson*, the Supreme Court held that felon disenfranchisement does not violate the Equal Protection Clause because Section 2 of the Fourteenth

Amendment expressly allows the practice. *See* 418 U.S. at 54. It follows that, for a felon, who has no more right to vote than a child or an alien, reenfranchisement does not concern a fundamental right but rather "is a mere benefit that [the State] can choose to withhold entirely." *Harvey*, 605 F.3d at 1079. And it further follows that, absent a suspect classification, *see Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012), challenges to the lines a State draws in determining which felons to reenfranchise are subject to rational-basis review.

Accordingly, circuit courts—including the pre-split Fifth Circuit in *Shepherd*—uniformly followed *Richardson* to its logical conclusion and applied rational-basis review to equal-protection challenges of non-suspect classifications made by felon disenfranchisement and reenfranchisement laws. *See Harvey*, 605 F.3d at 1079; *Hayden*, 594 F.3d at 170; *Owens*, 711 F.2d at 27; *Shepherd*, 575 F.2d at 1114–15.

*Jones* attempted to distinguish *Shepherd* because it did not involve a wealth classification. *See* 950 F.3d at 823–24. But *Shepherd*'s *reasoning* never indicated that application of rational-basis review was somehow limited to its facts. Rather, it reasoned that "selective disenfranchisement or reenfranchisement of convicted felons must pass the standard level of scrutiny applied to state laws allegedly violating the equal protection clause," *Shepherd*, 575 F.2d at 1114–15— rational-basis review. The same is true of the out-of-circuit authorities: all applied

rational-basis review because felons have forfeited their fundamental right to vote and, therefore, no fundamental right was at issue. *See Hayden*, 594 F.3d at 170; *Owens*, 711 F.2d at 27. That principle is no less true here than it was in those cases.

The *Jones* panel likewise attempted to distinguish the Ninth Circuit's decision in *Harvey*—which *did* involve the requirement that felons pay financial terms of their sentences—on the basis that the case involved a facial challenge and "left open the constitutional question arising from a re-enfranchisement scheme that continues to disenfranchise felons . . . unable to pay their fines." 950 F.3d at 821. While *Harvey* left that issue undecided, the court noted that it was not deciding whether "withholding voting rights from those who are truly unable to pay their criminal fines due to indigency would . . . *pass* [*the*] *rational basis test*," 605 F.3d at 1080 (emphasis added), thus confirming the applicable standard of review.

The *Jones* panel also concluded that heightened scrutiny was required by the so-called "*Griffin-Bearden* line of cases." 950 F.3d at 825. But there is no "*Griffin-Bearden* line of cases." *Griffin v. Illinois*, 351 U.S. 12 (1956), and *Bearden v. Georgia*, 461 U.S. 660 (1983), represent two related but distinct lines, each providing a narrow exception to the settled rule that rational-basis review applies in wealth-discrimination cases. Neither applies here.

The *Bearden* line applies when "poverty" is the "sole justification for *imprisonment.*" *Bearden*, 461 U.S. at 671 (emphasis added); *see also Tate v. Short*,

401 U.S. 395 (1971); *Williams v. Illinois*, 399 U.S. 235 (1970). It has no application to a case, as here, that does not involve imprisonment. Indeed, in *Williams*, the root of the *Bearden* line, the Supreme Court expressly indicated that "nothing we hold today limits the power of" the State "to impose *alternative sanctions* permitted by . . . law" upon an indigent defendant, 399 U.S. at 245 (emphasis added), making clear the Court's exclusive concern with imprisonment.

The *Griffin* line, meanwhile, involves only access by indigents to the judicial process in criminal and certain civil cases. *See, e.g.*, *M.L.B.*, 519 U.S. 102; *Mayer v. City of Chicago*, 404 U.S. 189 (1971); *Griffin*, 351 U.S. 12. This Court has *refused* to extend the *Griffin* line when the plaintiff could not "explain what judicial proceeding an indigent person cannot access" by virtue of the government action being challenged. *Walker*, 901 F.3d at 1264. The *Jones* panel did not invoke a single precedent applying *Griffin* beyond access to judicial process. Nor did it attempt to square its decision with *Walker*. En banc review is necessary to restore *Walker*'s correct interpretation of *Griffin* and its progeny.

Relatedly, the district court held, presumably as a matter of due process, *see* Ex. B at 98–99, that Appellants may prevent from voting a felon who seeks an advisory opinion on the amount owed and asserts inability to pay only if the State sets forth the exact amount of the felon's outstanding financial obligations *and* facts establishing that the felon is able to pay, *id*. at 119–20. This intrusive remedy

exceeded the district court's authority, as the "the decision to drastically alter [Florida]'s election procedures must rest with the [Florida] Secretary of State and other elected officials, not the courts." *Thompson v. Dewine*, — F.3d —, 2020 WL 2702483, at *6 (6th Cir. May 26, 2020) (per curiam).

In any event, the need for these procedures is parasitic on the court's wealth-discrimination analysis. If the State can rationally demand that *all* felons—including those unable to pay—must satisfy all financial aspects of their sentences, then the State need not show the precise amount owed or that any individual felon is able to pay. Once the en banc Court corrects the flawed equal-protection analysis adopted by *Jones*, any impetus for the district court's due-process remedy dissolves.

## III. Amendment 4 And SB-7066 Do Not Violate The Fourteenth Amendment.

The district court, although maintaining that heightened scrutiny applied, Ex. B at 36, nevertheless detoured into whether Florida's scheme passed even rational-basis review as applied to felons unable to pay, *see id.* at 41–69. Following the lead of *Jones*'s dicta, *see* 950 F.3d at 809–17, the district court made two remarkable conclusions: (1) that rational-basis review can proceed on an as-applied basis, even absent purposeful discrimination, Ex. B at 41; and (2) that Florida's scheme is irrational as applied to felons unable to pay, *id.* at 42.

The first conclusion eviscerates rational-basis review, which assesses whether a law's *classification* is rational. After all, although "[n]early any statute which

classifies people may be irrational as applied in particular cases," *Beller v. Middendorf*, 632 F.2d 788, 808 n.20 (9th Cir. 1980) (Kennedy, J.), that does not mean they all fail rational-basis review.

The second conclusion, meanwhile, fundamentally misunderstands the nature and operation of Florida's reenfranchisement scheme. It is entirely just, and thus rational, for the People of Florida to insist that felons repay their debt to society in full before they will be permitted to rejoin the electorate, and that is true even for those unable to pay and even if the majority of felons are unable to pay. *See Jones*, 950 F.3d at 810–11 ("Retribution is a valid penological goal." (quotation omitted)). Here, Florida's interest in retribution is not satisfied until all the terms of a felon's sentence are completed in full. This is true whether the uncompleted term at issue is a period of incarceration or a fine and this is true regardless of why the term remains unsatisfied.

The district court believed that this interest is undermined by the State's "first-dollar" policy, which credits payments from felons on the outstanding balance of some legal obligations—such as fines, fees, or costs that accrue *after* the felon's sentence is imposed—toward satisfaction of the financial obligations ordered as part of criminal sentence. *See* Ex. B at 56. But this policy is consistent with the State's demand that every felon pay his debt to society to rejoin the electorate. Amendment 4 and SB-7066 require only that felons pay the monetary amounts set

forth in their sentencing documents; the first-dollar policy supports exactly that. That a felon has a financial debt to the State or a victim does not mean that his financial debt to society—defined precisely as the amount set out within the four corners of his sentencing document—is not satisfied for purposes of Amendment 4 and SB-7066. The first-dollar policy seeks merely to strike a fair balance between the State's interests in retribution and administrability and felons' interest in prompt restoration once they have paid amounts equal to those imposed by their sentences. It favors the felon, and it is certainly rational.

## IV. Amendment 4 And SB-7066 Do Not Violate The Twenty-Fourth Amendment.

The district court erred further in concluding that fees and costs included in a criminal sentence are taxes under the Twenty-Fourth Amendment. Ex. B at 73–79. The court's first misstep was to apply that Amendment *at all* to felon reenfranchisement. Every court to consider similar challenges has concluded that felons do *not* have a Twenty-Fourth Amendment claim because felons do not have a fundamental right to vote, and reenfranchisement statutes only *restore* voting rights. *See Bredesen*, 624 F.3d at 751; *Harvey*, 605 F.3d at 1080; *Howard*, 2000 WL 203984, at *2. As the Sixth Circuit explained: "The challenged [reenfranchisement] provisions do not disenfranchise them or anyone else, poor or otherwise; [the State's] indisputably constitutional disenfranchisement statute accomplished that." *Bredesen*, 624 F.3d at 751. Rather than confront this reasoning, the district court

derisively asserted that Appellants' argument "makes no sense." Ex. B at 72. This cavalier dismissal of the analyses of three circuit courts should not be credited.

Even assuming the Twenty-Fourth Amendment has any bearing, the district court failed to justify why fees and costs lawfully included in a felon's *criminal sentence* should be treated any differently from fines and restitution, which the court conceded were penalties, not taxes. *See* Ex. B at 74–76. Indeed, what "makes no sense" is the district court's choice to ignore that every financial obligation imposed on a felon *because he has been convicted of a crime* is necessarily a penalty, rather than a tax. *See NFIB v. Sebelius*, 567 U.S. 519, 567 (2012) ("In distinguishing penalties from taxes, this Court has explained that if the concept of penalty means anything, it means punishment for an unlawful act or omission." (quotation omitted)). On no conceivable reading of the Twenty-Fourth Amendment can such penalties be a "tax." The district court's contrary decision merits the en banc Court's consideration.

## CONCLUSION

The en banc Court should hear this case in the first instance and reverse.

Dated: June 2, 2020

Respectfully submitted,

Joseph W. Jacquot
Nicholas A. Primrose
Joshua E. Pratt
Executive Office of the Governor
400 S. Monroe Street, PL-5
Tallahassee, FL 32399
Telephone: (850) 717-9310
Fax: (850) 488-9810
joe.jacquot@eog.myflorida.com
nicholas.primrose@eog.myflorida.com
joshua.pratt@eog.myflorida.com

Bradley R. McVay
Ashley E. Davis
Florida Department of State
R.A. Gray Building Suite, 100
500 S. Bronough Street
Tallahassee, FL 32399
Telephone: (850) 245-6536
Fax: (850) 245-6127
brad.mcvay@dos.myflorida.com
ashley.davis@dos.myflorida.com

s/ Charles J. Cooper
Charles J. Cooper
Peter A. Patterson
Steven J. Lindsay
Shelby L. Baird
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 220-9601
Fax: (202) 220-9601
ccooper@cooperkirk.com
ppatterson@cooperkirk.com
slindsay@cooperkirk.com
sbaird@cooperkirk.com

*Counsel for Defendants-Appellants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this petition complies with the type-volume limitations of FED. R. APP. P. 35 because this brief contains 3,883 words, excluding the accompanying documents authorized by 11th Cir. R. 35-5(a)–(d), (j), and (k).

This petition complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this petition has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: June 2, 2020

s/ Charles J. Cooper
Charles J. Cooper
*Counsel for Defendants-*
*Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on June 2, 2020. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 2, 2020

s/ Charles J. Cooper
Charles J. Cooper
*Counsel for Defendants-*
*Appellants*